IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **Zachary, S,**[1]<br><br>       Plaintiff,<br><br>       v.<br><br>**NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>       Defendant. | Case No. 6:17-cv-1448-SI<br><br>**OPINION AND ORDER** |

Katherine L. Eitenmiller, Brent Wells, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette St., Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Michael Howard, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Zachary S. ("Plaintiff"), seeks judicial review of the final decision by the Social Security Administration ("Defendant" or "Administration") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction to review the Administration's decision pursuant to 42 U.S.C. § 405(g). For the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

reasons discussed below, Defendant's decision denying Plaintiff's application for DIB is AFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Administration's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Administration's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Administration's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Administration. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Administration on a ground upon which the Administration did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was born on August 19, 1986. AR 33. Plaintiff filed for DIB on May 14, 2013, alleging disability beginning on July 31, 2011. AR 21. Plaintiff was 24 years old on the alleged disability onset date. *Id.* Defendant denied Plaintiff's application initially on December 26, 2013, and upon reconsideration on May 6, 2014. *Id*. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On May 2, 2016, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. *Id*. The Appeals Council declined Plaintiff's request for review of the ALJ's decision. AR 1. Plaintiff now seeks judicial review of the ALJ's decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Administration's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Administration must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Administration fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Administration proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. AR 21. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2011. Plaintiff was employed at a pizza restaurant from December 2011 to March 2012. AR 23. Earnings from this position were not enough to qualify as substantial gainful activity. AR 23. The ALJ, however, did not consider this employment an unsuccessful work attempt because Plaintiff did not mention physical or mental health symptoms as factors that contributed to his decision to stop working at the restaurant. AR 23. Plaintiff also worked in 2012 for his mother at her salon, and as a janitor. AR 24. Plaintiff did not report earnings from these positions, but the ALJ found that determining whether those employment positions qualified as substantial gainful activity was unnecessary because Plaintiff's DIB determination could be decided on other grounds. AR 24.

At step two, the ALJ found that Plaintiff had the following severe medical impairments: history of bipolar disorder with depression and anxiety; a history of Asperger's; and marijuana dependence. AR 24. The ALJ found that these impairments caused more than minimal

PAGE 5 – OPINION AND ORDER

restrictions of the claimant's ability to perform work-related activities. The ALJ found that recurring headaches and sleep apnea were non-severe and did not establish any resulting limitations that would significantly affect Plaintiff's ability to perform basic work activities. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* The ALJ then determined that Plaintiff has an RFC to perform a full range of work at all exertional levels but with some non-exertional limitations. AR 26. Specifically, Plaintiff is limited to performing simple, repetitive, routine tasks that require only occasional interaction with co-workers and no interaction with the general public. *Id*. At step four, the ALJ considered testimony from the vocational expert and concluded that Plaintiff cannot perform his past relevant work because of the social restrictions contained in the RFC. AR 33.

At step five, the ALJ considered Plaintiff's RFC, age, education, and work experience and found that jobs exist in significant numbers in the national economy that Plaintiff can perform. AR 33. These jobs included work as a commercial or institutional cleaner (DOT #381.687-014, SVP 2, unskilled, heavy with 750,000 positions in the national economy), a horticultural worker II (DOT #405.687-014, SVP 2, unskilled, heavy with 150,000 positions in the national economy); and sweeper, cleaner institutional (DOT #405 389.683-010, SVP 2, unskilled, medium with 100,000 positions in the national economy). The ALJ thus concluded that Plaintiff was not disabled under the Social Security Act. AR 34.

## DISCUSSION

Plaintiff contends that the Court should remand the ALJ's decision because the ALJ (A) failed to provide specific, clear, and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony; (B) failed to meet the legal and evidentiary

PAGE 6 – OPINION AND ORDER

standards to discount the medical opinions of Dr. Mike Myers and Dr. Julie Redner; and (C) erred in rejecting the competent lay witness statements in the record.

## A. Plaintiff's Symptom Testimony

### 1. Legal Standards

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new

rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. The ALj's decision was issued on May 2, 2016, and thus is governed by SSR 16-3p.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

    2. Analysis

Plaintiff stated that he was unable to work due to daily anxiety, depression, suicidal thoughts, difficulty interacting with others, social isolation, anger, and disturbed sleep. AR 53-66, 206-207. The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ offered numerous reasons for this finding.

To begin, the ALJ explained that Plaintiff's ability to maintain relationships with a friend and significant other contradict reports of an inability to maintain work. AR 27, 29. For example, Plaintiff maintained an online relationship with a girlfriend from Turkey. The girlfriend visited Plaintiff in November 2016 from Thanksgiving until December 9th. AR 66. Plaintiff stated he would like either to visit his girlfriend in Turkey or for her to visit him again but that lack of finances complicate both options. *Id*. Plaintiff also maintained relationships with and provided care for two young children. AR 39. The ALJ explained that such care likely requires emotional demands. *Id*. Relatedly, the ALJ explained that Plaintiff's ability to work as a janitor and in his mother's restaurant, and Plaintiff's stated interest in becoming a dog trainer, conflict with Plaintiff's testimony regarding his limitations. AR 29.

The ALJ also explained that Plaintiff's social activities are not entirely consistent with the severity of Plaintiff's stated symptoms regarding his ability to function socially. Plaintiff testified that the idea of playing basketball with random strangers was "daunting," but that he went to an open gym five months before the hearing and had a great time. AR 65. Plaintiff also testified that he enjoys going to concerts when he can. AR 332. During concerts, he "wig[s] out" and "feel[s] weird," but calms down once the lights go out and the concert starts. AR 74. The

PAGE 9 – OPINION AND ORDER

ALJ explained that the ability to attend concerts and play basketball, albeit with some difficulty facing the social interactions, required physical and emotional demands that conflicted with Plaintiff's symptom testimony. AR 29, 30.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The reasons provided by the ALJ are clear and convincing. Plaintiff's daily living activities and work history contradict his claims that he is totally disabled and show a level of activity that is inconsistent with Plaintiff's claimed limitations. *See id.*

## B. Treating Physicians

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for

"clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a nonexamining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include a physician's reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

Here, the doctors' opinions are generally consistent regarding Plaintiff's overall condition but conflict around Plaintiff's ability to interact socially and to accept supervision. Specifically, the State agency psychological consultants' mental health assessments indicated that Plaintiff needed a work setting that did not require frequent or close contact with the public or co-workers. AR 32. The consultants opined that Plaintiff could manage brief cursory contact with the public and could accept supervision delivered in a normative fashion. *Id*. Dr. Redner, an examining physician, opined that Plaintiff would do best in work environments that required no social skills or interactions with others. AR 31. Dr. Meyers, a treating physician, opined that Plaintiff's functioning fell within the poor to adequate range. AR 29. Because of the contradicting opinions, the ALJ may discredit Dr. Meyers' and Dr. Redners' opinions if the ALJ offers specific, legitimate reasons that are supported by substantial evidence in the record. *See Roberts*, 66 F. 3d at 184.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating

physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

1. **Dr. Redner**

Dr. Redner conducted a neurophysiological evaluation of Plaintiff on May 5, 2015. AR 441. Dr. Redner diagnosed Plaintiff with social anxiety disorder and generalized anxiety disorder, concluded that Plaintiff had difficulty understanding and considering the perspectives of others, and concluded that Plaintiff appeared unable or unwilling to take on responsibility and establish independence. Dr. Redner's recommendations included that: (1) "[a] job trial, possibly in a sheltered setting, likely would provide additional useful information for purposes of vocational planning;" (2) Plaintiff "likely will need assistance in developing realistic vocational goals;" and (3) Plaintiff "would likely do best at work that does not require social skill or extensive interaction with others." AR 441-42. The ALJ gave partial weight to Dr. Redner's opinion because the examination was in-person and generally consistent with the record as a whole.

Plaintiff argues that the ALJ improperly discounted Dr. Redner's opinion that Plaintiff could "only" work in a sheltered setting and Plaintiff is limited to jobs requiring no social skills or interactions with others. Plaintiff misreads the text of Dr. Redner's opinion. Dr. Redner's recommendations do not state that Plaintiff is limited to jobs requiring *no* social interactions, or that Plaintiff can *only* work in a sheltered job setting. Dr. Redner suggested that a job trial, possibly in a sheltered setting, might be helpful. This is a suggestion, not a requirement, and thus need not be incorporated into the RFC. *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (noting that when a doctor's observation is a recommendation,

PAGE 13 – OPINION AND ORDER

it is "neither a diagnosis nor statement of [the claimant's] functional capacity" and an ALJ "[does] not err by excluding it from the RFC"); *Espenas v. Colvin*, 2014 WL 7405655, at *8 (D. Or. Dec. 30, 2014) (noting that comments such as that the claimant "would benefit from additional instruction and time when adapting to more complex changes, and would benefit from assistance in setting work goals" were "occupational suggestions, not limitations per se"); *Villalobos v. Colvin*, 2014 WL 127084, at *8 (D. Or. Jan. 9, 2014) (noting that where the doctor's verbiage suggests "recommendations, as opposed to imperatives," they "are neither diagnoses nor statements of plaintiff's RFC").

Regarding the social limitations opined by Dr. Redner, the RFC the ALJ assigned Plaintiff incorporates Dr. Redner's recommendation. The RFC limits Plaintiff to only occasional interaction with co-workers and no interaction with the general public.

### 2. Dr. Meyers

Plaintiff began therapy with Dr. Meyers in July 2014. Dr. Meyers treated Plaintiff in four counseling sessions over a period of six months. AR 394-99. Dr. Meyers opined that Plaintiff was easily angered, had considerable difficulty grasping social cues and norms and recognizing his own emotions, and showed signs of Asperger's syndrome and bipolar disorder. Dr. Meyers opined that Plaintiff was functioning within the poor-to-adequate range. AR 399. The ALJ assigned Dr. Meyers' opinion regarding social functioning "partial weight" and ultimately concluded that Plaintiff faced moderate difficulties in social functioning. AR 25, 29. The ALJ's two reasons for discounting Dr. Meyers' opinion were that the opinion was a subjective snapshot lacking in specific details and Plaintiff's daily activities were not entirely consistent with the severity of the symptoms detailed in the medical opinion.

### a. Daily Activities

The ALJ's first reason for assigning Dr. Meyer's opinion partial weight was that the opinion was not consistent with Plaintiff's daily activities of playing basketball, caring for his children, preparing meals, performing household chores, driving, attending concerts, and playing video games. AR 29. Just as this reason was a clear and convincing reason to discount Plaintiff's subjective testimony, it is a specific, legitimate reason supported by substantial evidence in the record to discount Dr. Meyer's opinion. *See Bray*, 554 F.3d at 122 (holding that specific, legitimate reasons for rejecting a physician's opinion may include inconsistency with a claimant's daily activities).

### b. Subjective Snapshot

The ALJ's second reason for discounting Dr. Meyers' opinion was that the doctor's opinion was based on a limited, short-term relationship that resulted in a general assessment of functioning instead of an assessment of ability to function in the workplace. AR 29-30. According to the ALJ, the functional assessment represented only a "subjective snapshot." *Id*.

The ALJ should not apply the same scrutiny when discounting psychiatric treatment as "subjective" compared to discounting medical treatment for physical symptoms. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (stating that the "rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."). Additionally, "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id*. Regarding the alleged subjectivity of Dr. Meyer's opinion, Dr. Meyers' psychiatric treatment notes were not based entirely on Plaintiff's subjective testimony. Rather, the treatment notes also included his observations of Plaintiff. Dr. Meyers recorded his numerous

PAGE 15 – OPINION AND ORDER

observations during each treatment session and these observations provided clinical metrics to evaluate Plaintiff. AR 394-399 (assessing and observing Plaintiff's stressors, level of functioning, and progress regarding treatment goals). *Buck* cautions against an ALJ dismissing such treatment as subjective. 869 F.3d at 1049.

Moreover, controlling regulations, specifically 20 C.F.R. § 404.1527(c)(2)(ii), explain that "[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." Four visits qualify as a "number of times" and six months provides a "longitudinal picture" that, although not a multi-year picture, is nonetheless more than a single "snapshot" in time. Considering that the ALJ fully credited Dr. Gale Smolen's opinion, which was formed after one consultation—compared to Dr. Meyers' four treatment sessions over six months—the ALJ's reasoning for discrediting Dr. Meyers' opinion as a "snapshot" is inconsistent with the ALJ's own findings. Dr. Smolen's report contained a more detailed summary of Plaintiff's history, but relative length between a consulting physician and a treating physician's reports do not determine the degree of subjectivity. *Compare* AR 397 *with* AR 331-35.

For these reasons, the ALJ illegitimately discredited the doctor's opinion as a subjective snapshot and did not demonstrate that the opinion was brief, conclusory, and inadequately supported by clinical findings. *See Bray*, 554 F.3d at 122. Because the ALJ gave one specific and legitimate reason to discount Dr. Meyers' testimony, however, this error is harmless.

## C. Lay Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment

PAGE 16 – OPINION AND ORDER

affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Two lay witnesses, Elizabeth Walker and Mary Reed, provided testimony regarding Plaintiff's ability to work. The ALJ assigned partial weight to both witnesses' testimony.

   1. **Elizabeth Walker**

Ms. Walker is Plaintiff's mother. She submitted reports that detailed Plaintiff's difficulties in his ability to interact socially and to maintain employment. The portion of her reports at issue states that Plaintiff:

PAGE 17 – OPINION AND ORDER

> is completely incapacitated by his anxiety and is unable to balance
> his emotions over small personal tasks and challenges, even with
> family members alongside to support and calm him. He has not
> been able to manage in a work setting and his attempts have
> exacerbated his emotional outbursts, anxiety, and suicidal
> thoughts.

AR 285.

The ALJ's first reason for assigning the opinion limited weight was because of Ms. Walker's maternal relationship to Plaintiff. AR 27. 20 C.F.R. § 404.1513(a)(4) states that nonmedical sources include "family members" and that family members are able to provide needed information. The Regulations further explain that:

> [s]ource(s) who are best able to provide the needed information are
> those who have observed the claimant on a long-term basis, are
> knowledgeable about the claimant's current day-to-day
> functioning, and can contrast this to the claimant's "premorbid"
> functioning if relevant. People either living with the claimant or
> those in close contact with the claimant are preferred.

*Id.* The Ninth Circuit has reiterated this rule. A close family member is not disqualified from rendering a competent opinion of how a claimant's impairment affects the ability to perform basic work activities. *Valentine*, 574 F.3d at 693. The ALJ's first reason for discrediting Ms. Walker is, therefore, flawed.

The ALJ's second and third reasons for assigning Ms. Walker's opinion little weight were because her reports contradicted Plaintiff's treatment records and activities of daily living. AR 27. Regarding treatment records, the State agency medical consultants opined that Plaintiff had mild to moderate limitations in social functioning and could participate in the workforce. Likewise, Dr. Smolen did not opine that Plaintiff's limitations regarding social interactions were debilitating. AR 331-335. Dr. Meyer also did not opine that Plaintiff's limitations prevented him from participating in the workforce. AR 394-399. The medical records, therefore, contradict

Ms. Walker's opinion and the ALJ's explanation concerning inconsistent medical records provided a germane and specific reason for discounting Ms. Walker's opinion.

Similarly, regarding daily activities, the ALJ explained in relevant and specific terms how Plaintiff's ability to maintain relationships with a friend and significant others, as well as his ability to drive, attend medical appointments on his own, care for his young children, play basketball with strangers, and attend concerts contradict reports of an inability to manage in a work setting. AR 27. This was also a germane reason to discount Ms. Walker's testimony.

### 2. Mary Reed

Ms. Reed is Plaintiff's friend. She submitted a letter that stated Plaintiff was difficult to be around due to his obsession about germs, his stubborn nature, and his misinterpretation of other people's words or behaviors. The ALJ gave little weight to Ms. Reed's statements because the nature and extent of her relationship with Plaintiff was unknown and Ms. Reed's statements were not indicative of an inability to maintain work. AR 27. The ALJ also noted that the social restrictions contained in the RFC account for Ms. Reed's statements about Plaintiff. *Id*. The ALJ, therefore, did not reject Ms. Reed's opinion and no conflict exists. *See Turner v. Comm'r of Soc. Sec. Admin*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (finding that the ALJ did not need to provide reasons for rejecting an opinion when the ALJ incorporated the opinion's conclusions).

## CONCLUSION

The Administration's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 12th day of December, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge